We will hear argument next in In Re Rockenberger No. 17-1035. Mr. Fortney? Yes, thank you, Your Honor. Thank you for hearing my case. It pleases the court. At risk of oversimplifying my client's invention, this is the true story of present inventors and the three approaches to forming a silicon film from a liquid phase composition, including a liquid phase silane compound. I will use silane ink as a shorthand notation for the composition. The first approach that the inventors tried was first depositing the silane ink, followed by irradiation, which is exemplified by the Yudasaka reference, which has been cited against all of the claims and was a reference affirmed by the board. What the inventors found when they tried to spin coat the silane ink is that the ink spun right off the substrate. Later when they tried to print the ink, they found that the ink beaded up or flowed in unwanted areas in an unpredictable way. When they tried using higher molecular weight polysilanes, they still found that if they tried to deposit without irradiation, they was not continuous, it didn't coat much of the substrate. So they rejected that approach and tried a second approach in which they pre-irradiated the silane ink, then deposited it. This is exemplified by the Aoki reference, which the PTAB considers to be closest to the claims, even though it wasn't cited against the claims. They discovered that pre-irradiation made the ink unstable, it formed a solid material, and even after filtration, the solid material reappeared anywhere from a few minutes to a few days later. Worse than that, the instability of the ink was unpredictable. Different batches made in the same way would have different properties over time, and they had no way to know or predict what those properties were going to be. So they realized they can't use that in commercial production, and they rejected that approach and thought long and hard about how to solve the problems, and they invented what we call contemporaneous irradiation and deposition, where the silane ink is irradiated during at least some part of the deposition process. The narrative you just provided about trying out, I'm going to summarize here, but perhaps inaccurately, trying out a process like Aoki, finding it was unsatisfactory and therefore moving to something else. I took it that the core of the board's rejection of your unexpected results contention was that you didn't make an unexpected results comparison to Aoki. So how does the narrative you just suggest the absence of evidence of a comparison to Aoki, which is what your narrative seems to suggest? There are several explanations, but I think the most relevant one to answer your question is that a side-by-side comparison with Aoki is impossible. Pre-irradiation, as I mentioned, changes the composition over time, and there's no way to really compare apples to apples between the present invention and Aoki. There's no way to say the compositions are going to be the same if they're irradiated at different times. Even if they are irradiated at different times, the compositions may have variances later in time. So I think that's one reason why we really couldn't do a comparison with Aoki. We also disclaimed compositions that have solid phase materials in them in the application. Anything that has solid phase materials in it causes non-uniformities in the film that's produced later. So that's unacceptable for the applications and electronics that we were considering, that the inventors were considering. The other thing is Aoki is just not the closest prior art reference, and I don't think we need to compare against something that's not the closest prior art reference. We saw that Yudasaka differed from our claims only in the timing of irradiation, whereas Aoki differs from our claims in both the timing and in the composition being deposited. It's critical... When you focus on the composition being deposited, are you focusing on a particular compound within the larger class of silanes? No, Your Honor. We're focusing on the fact that it has to be a liquid phase composition. There can't be any solid phase materials present. That's essential for forming a uniform continuous film. The closest prior art question, is that a question of fact or a question of law for review purposes? I was hoping you would know that answer better than me. I'm viewing it as a question of fact, just to be safe. I'd be very happy to consider it a question of law, just looking at the first two Graham factors. It does seem like it would be a question of fact, analogous to the Graham factors. Right. But what about... Why does the closest prior art have to be a single reference? Why couldn't the closest prior art be a couple of references? Sure, and I think that's the case when the references are, say, equidistant from the claims. If the difference is, or the disclosure is, equally different. Our position is that Aoki is more different because of the likelihood of solid phase materials forming in their composition as it's being deposited. To be honest, we truly don't know whether there are solid phase materials present, but we do know it's possible, and in some cases, very likely. What we do know about Yudasaka is that it is the same. There are no solid phase materials present when they deposit. So for those reasons, we felt that Yudasaka is definitely closer than Aoki. Could someone take the position that they're equidistant? I'm not sure I'd want to argue that one too strenuously, especially since I only have 10 minutes. But in any case, I think we have unexpected results against both references. As we said, Aoki, because of the risk of solid phase materials, and because that pre-irradiation changes the composition over time in unpredictable ways, that approach just can't be used for any kind of reliable process that you would need in commercial production. Prior to the invention, there really was no market for this material and no market for these methods. This invention enables the use of liquid phase. Coming back to the presiding judge's question about the board's finding that you hadn't made any showing with regard to Aoki. What you told us in the first part of your oral argument is interesting, but it's not of record, right? No, it is of record. It's in the declarations that we submitted, at least in the Rockenberger Declaration. Of why it is that Aoki doesn't solve the problem? Yes, Your Honor. Can you identify that? Do you have that? I don't have it handy, but I'll… In the Rockenberger Declaration? Yes, there is a section of the Rockenberger Declaration that specifically addressed Aoki, its deficiencies, and our improvements relative to the approach of Aoki. Okay. If I may just touch quickly on the findings of fact for which we feel there was either very little or no evidence to support the findings of the board. The board found that we didn't demonstrate that spin coating without contemporaneous irradiation doesn't work. In other words, the approach of Yudasaka doesn't work. But we had a lot of direct side-by-side comparisons with at least the composition closest to what we were claiming that embodied Yudasaka that didn't work. We had an affirmative statement by two different declarants saying that every approach that they took to depositing without contemporaneous irradiation didn't work. That was first made in the Zurcher Declaration, I think in 2007, and it was affirmed by Dr. Rockenberger later in his declaration. The board found that there is no evidence that one of ordinary skill in the art would not have been able to make a film following the procedure disclosed by Yudasaka. And we didn't challenge that. That's a non-issue. In fact, there's an affirmative statement in the Rockenberger Declaration that says that one could have formed a film following Yudasaka. But we had some variances in what we were doing in order to make our process work. And we compared our process with the closest process representative of Yudasaka that's consistent with what we were doing to minimize the number of variables. We explained the differences and why one following Yudasaka would have been able to form a film and why one following our process but modified to conform with the process of Yudasaka would not have been able to form a film. Another finding of fact for which there is no evidence was that we didn't submit evidence of unexpected results for silanes other than cyclopentasilane and polycyclopentasilane. There's evidence submitted I think in the Declaration of Rockenberger for a silane called polyheptasilane. There's also an affirmative statement in the Rockenberger Declaration that the results would be expected to be the same for all liquid phase compositions with a liquid phase silane. It was unambiguous and unqualified. Another finding of fact for which there is no evidence was the finding that we submitted no evidence of unexpected results for a composition having any solvent or no solvent. Admittedly, most of the results used a particular cycloalkane solvent, but we did have evidence that other solvents either did work or would work. And we submitted a patent that was filed later that disclosed use of a polysilane without solvent to form a film. And I think I heard from Judge Stahl yesterday morning, a U.S. patent, issued U.S. patent is presumed valid for whatever it discloses, including for compliance with the enablement requirement. So we had evidence. You're about halfway through your rebuttal time. Maybe you want to save the time and respond to whatever comes up. Okay. Well, there are other findings of fact. If I can quickly touch on the conclusions of law that we thought were fairly clearly erroneous. The PTAB did not consider the evidence of discovery of a problem. We think that they erroneously looked to Ansell Road, a secondary reference that concerned only organic compounds, for a suggestion that simultaneous irradiation would work in silanes. But at the time Ansell Road made their statement, I think it wasn't known that silanes could even be polymerizable. This court's repeatedly said that even distantly homologous compounds within the same class cannot be assumed to have similar behavior. And these are completely different compounds. Substantively different compounds. And we think there's definitely an error in deciding that there's no reasonable expectation of success. Because prior to the invention, there are so many competing processes going on in simultaneous or contemporaneous irradiation and deposition that we had no idea what would work, what better would work. The rate of polymerization or cross-linking induced by the irradiation would have to be competitive with the rate of deposition. Aoki and Yudasaka expressly disclosed a minimum of five minutes in the examples that they disclosed. And deposition takes less than five minutes. So we really didn't know. I think one of ordinary skill in the art really would not have a reasonable expectation of success prior to the invention. And with that, I think I'll see you. 45 seconds of rebuttal time. Upon rebuttal, if you could give us the citation and the record to Rockenberger on Aoki. Yes. Yes, Your Honor. Thank you. Thank you. Mr. Russillo? Russillo, correct. Brian Russillo for the appellate. Please the court. The board correctly concluded here that Rockenberger's claims were obvious over the combination of Yudasaka and Ansel Road when viewed together with the unexpected results evidence provided by Rockenberger. In particular, the board correctly found that the unexpected results offered by Rockenberger suffered from several infirmities. And the first one that the court was just speaking about was that it was not compared to the closest prior art, which in this case was Aoki. The board, the question of what is the closest prior art is a question of fact. And thus, if the board's determination is supported by substantial evidence. You heard your adversary's explanation when he gave us a little history talk about what his client did by way of testing Aoki, or Aoki-like. And he says that same story is memorialized in Rockenberger's declaration. Is that so? The story that's in Rockenberger's declaration is that they did test the ink. They did irradiate the ink beforehand, but they did not actually try to spin test it. They did not try to perform placing it onto the substrate, spinning it, and seeing what the result was. They just decided that the liquid was too unpredictable over a period of time, and so they did not actually perform any tests beyond the irradiation of it. So I think in this case, the board was correct to find that they did not provide any tests against the closest prior art, which in this case is Aoki. So in the record of JA 699 paragraph 50 and 51, there is a discussion in that Rockenberger declaration about Aoki, but I guess it's your position that that was not sufficient. That's correct, because that information about Aoki is all they were doing was creating the ink. If you look, it doesn't say they actually tested it. They just decided that over a period of time, because they viewed it over some extended period of time, the silane solution would continue to polymerize and get greater, higher order silanes in it. And so it would create some solids in it, and that would create unpredictability with it. But the way that Aoki teaches the – sorry, go back to that point. But there's no evidence in here. There's nothing that they said they actually used that material to do any kind of testing. They just presumed that it was different enough, and they didn't try to do the actual test. Do you think if they would have actually tried and failed, that would have been something that would have been – They would have had a stronger argument, yes. And especially because Aoki teaches – and the board found that Aoki teaches that you use the solution immediately after you irradiate it. So waiting this period of time and seeing how it reacts isn't really relevant to what Aoki teaches. So Aoki teaches the irradiation and then depositing it onto the substrate. The second thing that Aoki also teaches is filtering. So if you do – when you created this solution, you did find that there were precipitates in it, the polysilane precipitates. You could just filter that out, and you would end up with a liquid solution that you would be able to put onto the substrate and test. And that would be the proper test in this case. Here the board found that the key here is the timing of the irradiation. And they looked to Rockenberger's declaration. They looked to the claims, and they found that the timing that the UV irradiation was happening during at least part of the deposition process was the key to the claimed unexpected results in this case. And so they found that the important thing was the placement and the presence of a silane solution that had been irradiated during the deposition process. And the only prior art that provided that was Aoki here. And that's why they found that Aoki was the closest prior art. Do you have a view on whether the closest prior art has to be a single reference or whether it could include multiple references? I don't have a view on that. I think that I could see a scenario where it could be more than one piece of prior art. But I think in most cases it would be a single piece of prior art that's identified as the closest. The whole point is that you're supposed to be showing unexpected results relative to something, so that you have something that's different from the prior art. I just don't understand why it would have to always be one reference. Exactly. That's the basis of the inquiry of the closest prior art, is to really show that it was truly unexpected to one of ordinary sculling art the results that one got. So in order to do that, you'd look for the closest piece of prior art. And that way you can tell whether or not the results that were received by the applicant were truly unexpected to one of ordinary sculling art at the time the invention was made. So I don't think there's necessarily a limitation on the number of references that are used for that. But here in this case, again, the board found that Aoki was the closest piece of prior art. It's a question of fact. And because of that, and there's substantial evidence to support it, even if a fact finder would come to two different reasonable conclusions, that perhaps Yudasaka was closer, or Aoki was closer, or they were equally distant to each other, then this court should defer to the board's determination that Aoki is the closest prior art. And the board's finding that they did not provide any tests to compare it to Aoki, the process of Aoki. Therefore, these infirmities prevented it from overcoming the showing of obviousness. With respect to the question of, that's not the only problem that the board found. The board also found that the results that Rockenberger got in their experiment with the coverage would not have been unexpected. Because Aoki and Yudasaka both taught that you could use UV irradiation either before or after the deposition process and still get coverage on the substrate to create a thin film and get uniform coverage. And then also, Ansell Road teaches that you could use UV irradiation during the process of depositing a photopolymer solution and applying the UV radiation to it, which then would increase the viscosity by cross-linking. And that would provide coverage as well. So looking at the total of the prior art, you have prior art that teaches irradiation before the depositing step, irradiation during the depositing step, and irradiation after the depositing step, all creating a substance or a substrate that had a coating on it. What is the relation in timing between the depositing and the spinning? In the claims, they claim that the UV radiation step has to be done at least during part of the deposition step, during the depositing step. And the depositing step includes a spin rotation or spin coating step. So the depositing step, spin coating is one type of depositing step. So there can be depositing while the spinning is taking place. That's correct. So how, just as an intuitive matter, does post-deposition UV irradiation to increase viscosity have any backwards-in-time effect on the sloshing, let's call it, caused by the spinning? It wouldn't. You're correct. It wouldn't have that. And if you accept that the timing of the UV irradiation is key, then that would not be the closest piece of prior art. And that process would not be as helpful or as relevant to a secondary consideration analysis. I think what Rockenberger is arguing is that the Yudhisthaka is closest because they start with the same solution. They start with the same silane solution that they're depositing onto the substrate. And what is the difference in solutions between what's in Aoki and what's claimed here? Their argument is that once you irradiate that solution, you get polysilanes, and you get possibly precipitates from the polymerization of the hydrosilanes in there. And so you've got a solution that's got solids in it, which is different than what they've claimed because they've claimed a liquid solution. And you said Aoki teaches filtering? That's correct. Aoki teaches filtering, and it also teaches— the board found that it teaches the deposition shortly after the irradiation. So there wouldn't be a long period of time to allow the precipitates to form. And Aoki teaches that the irradiation step can be as quick as 0.1 seconds. I think the board also found, in addition to the problem with Aoki and not being in the closest prior art, they also found that the evidence and the testing was not commensurate with the scope of the claims. For example, that they didn't do any testing with respect to the germanium elements. And the claim clearly encompasses both germanium and silicon. And the only evidence that they provided was a conclusory statement by Rockenberger that based on his experience, he would have expected the germanium hydrides to act in the same way. This court in the Greenfield case has said that that type of conclusory statement is not enough. You need more evidence of correlation or something to tie why the germanium hydrides would act in the same way as the silicon hydrides here. Most of that argument today has been, unless I've misunderstood it, relating to the secondary considerations unexpected results issue. That's correct. There are 18 separately patentable groups here in the case, right? Yes. My understanding was that all of those claims were up for grabs on the first appeal. Yes. From the examiner, and the board sustained the examiner on those. And on the second round, although they were challenged, the board in essence said, go look at our original opinion. That's correct. And that's because of the way that the process played out. When after the first board's decision, Rockenberger reopened examination. And instead of amending the claims, what he did is he solely put in additional secondary consideration evidence. And he applied that secondary consideration evidence only to independent claims. He has preserved his arguments with regard to the 18 groups from the first time around. And while the board addressed that, the board said that he did not show any error in the second round of examination to overturn his decision. But all of that is before us. We have to go back and look at the original board decision to find out why the board sustained the examiner's rejection across the board of all those claims. The first board's decision, yes, is before you. Am I correct in understanding that after the board's first final decision, the patent applicant then has the opportunity to either go back and reopen prosecution or appeal to this court? They can't do both, right? That's correct. And he chose to reopen prosecution and not to appeal that first board's decision to this court. Go ahead. I'm sorry. So I thought his only option would then be to take an appeal now, that there wouldn't be an option to have appealed earlier if he was going to reopen prosecution. Is that right? Well, I'm sorry. So in reopening prosecution and then only addressing the secondary consideration, I would submit that he's And that it rests on the board's original decision here. He did not show any additional error in that second round of examination. Does that mean we can't reach the merits of the original decision? When you say waived. He got an adverse decision from the board. He was told he could either appeal up here, right, or he'd go back and prosecute some more. He chose to go back and prosecute some more. Why is he waiving any right to a judicial review of the earlier rejection? Well, I think the court can reach it, but I don't think there's any additional argument. I don't think he's made any arguments to support his request to overturn or reverse the board's decision. So we'd have to go look at the arguments he presented to the board the first time around? Yes. But we can do that. He has preserved for this appeal the challenge to the initial board decision? Yes or no? I think he has preserved it, but he didn't raise arguments. He didn't continuously raise and carry on the arguments. Your briefs in this court is solely restricted to the unexpected results issue? I'm sorry, can you answer that? Is the only issue in front of this court the correctness of the board's decision on unexpected results? I think everything rises to fall. I think everything rises to fall. Is the prima facie case up for grabs or not? No, I don't believe that the prima facie case is up for grabs here. I think that the- At all? I think that by not challenging the prima facie case the second time around, he- Before the board. Before the board, that that's not properly before the court. Now, what we're focused on here- You addressed those in your brief in 56 to 64. You break into groups 3, 11, 13, 15. And you discuss all that rationale, right? I did, yes. That was unnecessary? I didn't have to read that? I didn't have to write that. I think that was in response to his complaint that the board hadn't addressed the claims. And I think the different group- Why wasn't your answer they didn't have to address it? Because they didn't have enough time? In retrospect, that would have been a much easier- That's what you're telling me now. Brett, that's what you're telling me now. That's perhaps what we should have said. I think you're over time, so let's hear from Mr. Fortney. You have a little under a minute, Brett. Okay, sorry. Okay, so the Rockenberger Declaration addresses its improvements relative to IOP at Appendix 693 and 694, 699, 700, and 712. We do have comparative test results against a composition that's closer to the claims than that disclosed by AOKI. Experiment 14 of the Rockenberger Declaration deposited a polysilane that was made in a different way and thus was stable, and thus within the scope of the composition being deposited, and that didn't coat the substrate. So we do have comparative testing against a composition closer to our claims than AOKI discloses. That, I'm afraid, is it? Thank you. Thank you, Your Honor. Case is submitted.